# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 16-Civ-20219-TORRES

SAMUEL BENZANT,

      Petitioner,

v.

JULIE L. JONES, Secretary,
Florida Department of Corrections, *et al.*,

      Respondents.

_____/

## <u>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS</u>

This matter is before the Court on Samuel Benzant's ("Petitioner") Petition for a Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 that seeks to vacate the state court judgment and sentence against him. [D.E. 1]. The Government responded in opposition on November 27, 2017 [D.E. 19] and Petitioner replied on January 18, 2018. [D.E. 23]. Therefore, the Petition is now ripe for disposition. After careful review of the record and the arguments presented, we conclude that the Petition as a whole is **DENIED**.

# I.    BACKGROUND

Petitioner was charged by indictment – alongside Henry Tomas Ramirez and Rudy Daniel Salazar – with first-degree murder and robbery with a firearm. Following a jury trial, Petitioner was found guilty as charged and sentenced to a term of life imprisonment on count one and a term of forty-five years imprisonment on count two.   On June 7, 2007, Petitioner filed a notice of appeal from the final judgment of conviction and sentence.   On direct appeal, Petitioner argued that the evidence that he had committed two unrelated crimes should have been redacted from his statement to the jury because the evidence was not inextricably intertwined with the charged offenses.   The State filed an answer arguing that there was no abuse of discretion and the state appellate court issued a written opinion affirming the conviction and sentence on April 14, 2010.   *See Benzant v. State*, 34 So. 3d 112, 113 (Fla. DCA 2010).   A *pro se* motion for rehearing and rehearing en banc was filed on June 8, 2010, and denied on July 21, 2010.

On March 22, 2012, Petitioner filed a motion for post-conviction relief in state court.   Petitioner raised four claims for relief and an evidentiary hearing was scheduled.   On July 5, 2013, the trial court issued an Order denying the motion for post-conviction relief.   Ground one was denied on the merits, finding that Petitioner's trial counsel conducted a sound legal strategy.   Ground two was abandoned at the evidentiary hearing.   Ground three was found to be without merit

because Petitioner affirmed his acceptance of the jury panel. And ground four was denied on the merits because counsel's conduct constituted a sound trial strategy.

On July 31, 2013, Petitioner filed a notice of appeal on the Order denying the post-conviction relief on July 5, 2013. Petitioner argued that his trial counsel was ineffective for failing to strike a juror who could not accept false confessions in a case. The appellate court per curiam affirmed the lower court's ruling on December 31, 2014. *See Benzant v. State*, 155 So. 3d 357 (Fla. 3d DCA 2014). A mandate issued on January 16, 2015.

On January 19, 2016, Petitioner filed a writ for habeas corpus, raising the following four grounds for relief: (1) the state trial court erred in failing to grant defense counsel's motion to redact Petitioner's statement of evidence that he had committed a robbery that was unrelated to the crimes charged, (2) defense counsel rendered ineffective assistance of counsel by failing to strike a juror, (3) appellate counsel rendered ineffective assistance of counsel by failing to raise on direct appeal that the state trial court erred by denying the motion to suppress Petitioner's statements to law enforcement, and (4) the cumulative effect of the errors in this case deprived Petitioner of a fair trial. We will discuss each of the arguments raised in turn.

## II.   ANALYSIS

Section 2254 of Title 28 of the United States Code, or the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides the habeas corpus remedy

for a state prisoner who is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). An application for habeas corpus relief in federal court must include reference to a specific constitutional guarantee as well as a statement of the facts that entitle the petitioner to relief. *See Jimenex v. Fla. Dep't of Corrs.,* 481 F.3d 1337, 1342 (11th Cir. 2007).

A. ***Standard of Review***

The AEDPA provides very limited circumstances for federal habeas corpus claims, and Section 2254(d) of AEDPA governs the federal court's review of claims that have already arisen in state court. *See Perry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell,* 353 F.3d 880, 890 (11th Cir. 2003) (showing that the AEDPA is clear that a federal court should give substantial deference to a state court's findings of fact); *see also Cave v. Sec'y for Dep't of Corr.,* 638 F.3d 739, 745 (11th Cir. 2011) ("Congress mandated that 'a determination of a factual issue made by a State court shall be presumed to be correct,' and that a habeas petitioner bears the burden of rebutting this presumption by 'clear and convincing evidence.'") (quoting 2254(e)(1)). The standard for federal habeas relief of a state prisoner is the following:

> Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see, e.g., Price v. Vincent,* 538 U.S. 634, 638-39 (2003); *Clark v. Crosby,* 335 F.3d 1303, 1308 (11th Cir. 2003).

The "contrary to" and "unreasonable application" clauses set forth in the standard above are different bases for reviewing a state court's decision. *Putnam v. Head,* 268 F.3d 1223, 1241 (11th Cir. 2001) (citing *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000)). First, the "contrary to" clause applies if (1) the state court ruled in contradiction to governing law set forth by the Supreme Court, or (2) the state court arrived at a result different than that reached in a Supreme Court case with materially indistinguishable facts. *Putnam,* 268 F.3d at 1241.

Second, the "unreasonable application" clause applies if the state court's judgment was "objectively unreasonable." *Id.; Woodford v. Visciotti,* 537 U.S. 19, 24-25 (2002) (showing that it is the petitioner's burden to show the state court applied federal law to the facts of his case in an objectively unreasonable manner). "An 'unreasonable application' of clearly established federal law occurs when the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Terrell v. GDCP Warden,* 744 F.3d 1255, 1261 (11th Cir. 2014) (quoting *Bell v. Cone,* 535 U.S. 685, 694 (2002)). But it is important to recognize the difference between an "unreasonable" and an "incorrect" application of federal law. *Id.* Even a "strong case for relief" does not

necessarily mean that the state court's contrary conclusion was "unreasonable." *Id.* (quoting *Harrington v. Richter,* 562 U.S. 86, 102 (2011)); *see, e.g., Loggins v. Thomas,* 654 F.3d 1204, 1220 (11th Cir. 2011) (habeas relief is not available if fairminded jurists could agree with the state court's decision).

Moreover, when a habeas case reaches the federal level, the state court's factual findings are presumed to be correct, and a petitioner must rebut this presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Henderson,* 353 F. 3d at 890-91; *see also Bell v. Cone,* 543 U.S. 447, 455 (2005) (stating that Section 2254 "dictates a 'highly deferential standard for evaluating state-court rulings'") (quoting *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997)). This presumption thus demands that state court decisions be given the "benefit of the doubt." *Woodford,* 537 U.S. at 24.

Finally, we also recognize that all that is required from a state court is a rejection of the claim on the merits, not an opinion that explains the rationale for the ruling. *See Peoples v. Campbell,* 377 F.3d 1208, 1227 (11th Cir. 2004). Federal courts are thus "not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation." *Bell,* 543 U.S. at 455 (citations omitted).

### B.  *Exhaustion and Procedural Default*

As a preliminary matter, the Court must consider whether Petitioner exhausted his state court remedies. A state prisoner must first exhaust all of his

federal claims in the "ordinary appellate review procedure" in the state system before seeking federal habeas review. *See* 28 U.S.C. § 2244(b)(1); *O'Sullivan v. Boerckel,* 526 U.S. 838, 847 (1999). To exhaust his state court remedies, Petitioner must have already "fairly present[ed]" every issue raised in his federal petition either on direct appeal or collateral review in the state system, including the state supreme court with powers of discretionary review, to alert the court to the federal nature of the claim. *See Castille v. Peoples,* 489 U.S. 346, 352 (1989); *Duncan v. Henry,* 513 U.S. 364, 365 (1995) (per curiam). In other words, to properly exhaust these remedies, the state prisoner must "fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Snowden v. Singletary,* 135 F.3d 732, 735 (11th Cir. 1998) (quoting *Duncan,* 513 U.S. at 365). Because exhaustion is not a jurisdictional issue, the Government may waive the defense that the petitioner has not exhausted his state remedies. *See* 28 U.S.C. § 2254(b)(3) (providing that the State must make this waiver expressly).

The Government argues that two of Petitioner's claims – specifically in grounds one and three[1] – should not be considered on the merits because Petitioner failed to exhaust them in state court. *See*, *e.g.*, *McDaniel v. Sec'y, Dep't of Corr.*, 2011 WL 6258461, at *4 (M.D. Fla. Dec. 13, 2011) (finding that the petitioner's claim was unexhausted because petitioner "did not fairly present to the state trial court the

---

[1] The parties agree that the claims in ground two and four are exhausted and should be considered on the merits.

constitutional claims she raises in grounds one and two. Nor did she fairly present any such claim to the state district court of appeal."); *Paz v. Sec'y, Dep't of Corr.*, 2010 WL 3835865, at *9 (M.D. Fla. Sept. 30, 2010) (finding that the petitioner "has not properly exhausted his federal constitutional claim of violation of his confrontation rights because he did not fairly present such claim to the state trial court."); *see also Duncan*, 513 U.S. at 366 ("Respondent did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment.").

Exhaustion requires that state prisoners "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. With respect to the Florida state courts, one complete round generally means that the "decision of the district court of appeal is the final decision in the course of the normal appellate process." *Tucker v. Dep't of Corr.*, 301 F.3d 1281, 1286 (11th Cir. 2002); *Williams v. Wainwright*, 452 F.2d 775, 776 (5th Cir. 1971) ("The Florida District Courts of Appeal were created not as intermediate courts of appeal but as the "end of the road" for most appeals.").

"The Supreme Court has stated that a petitioner may satisfy the exhaustion requirement 'by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply

labeling the claim 'federal'." *Blanche v. Sec'y, Dep't of Corr.*, 378 F. App'x 984 (11th Cir. 2010) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). The Eleventh Circuit applies the *Baldwin* formulation "with common sense and in light of the purpose underlying the exhaustion requirement: to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *Blanche*, 378 F. App'x at 985 (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)); *Preston*, 785 F.3d at 457 ("[A] petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts."). This means that exhaustion occurs when a petitioner "present[s] his claims to the state courts such that they are permitted the 'opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.'" *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting *Picard*, 404 U.S. at 278).

Generally speaking, "it is not at all clear that a petitioner can exhaust a federal claim by raising an analogous state law claim" and that "simply mentioning a phrase common to both state and federal law, like 'sufficiency of the evidence,' cannot constitute fairly presenting a federal claim to the state courts." *Preston*, 785 F.3d at 460; *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) ("It is not enough that ... a *somewhat similar* state-law claim was made.") (emphasis added); *McNair*, 416 F.3d at 1303 ("[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record"). And

while the analysis in *Preston* is dicta, the Eleventh Circuit has continued to express

considerable doubt on whether a petitioner can exhaust a federal claim with an

analogous state law claim.[2] *See id.* at 458 (finding that the U.S. Supreme Court's

decision in "*Lucas* and *Baldwin* stand for the proposition that a petitioner with a

claim that could arise under either state or federal law must *clearly indicate* to the

state courts that he intends to bring a federal claim.") (emphasis added); *Ramos v.*

*Sec'y, Florida Dep't of Corr.*, 441 F. App'x 689, 697 (11th Cir. 2011) ("In *McNair,* we

found that a citation to a single federal case in a string of cases, and a passing

reference in the conclusion of an argument to various amendments of the

Constitution did not fairly present the federal issue to the state court, barring federal

habeas review for lack of exhaustion in the state courts.") (quoting *McNair*, 416 F.3d

at 1303-04); *Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847 (11th Cir. 2008)

("Pearson cited exclusively to state cases, and all of his substantive arguments

---

[2]     Notwithstanding the fact that the Eleventh Circuit has yet to hold as a general
rule that a petitioner may not exhaust a federal claim by raising an analogous state
law claim, other circuits have widely adopted this approach.  *See, e.g.*, *Nickleson v.*
*Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) ("The exhaustion doctrine demands more
than allusions in state court to facts or legal issues that might be comprehended
within a later federal habeas petition."); *Nash v. Russell*, 807 F.3d 892, 898 (8th Cir.
2015) ("In order to 'fairly present' a claim, 'a petitioner is required to refer to a
specific federal constitutional right, a particular constitutional provision, a federal
constitutional case, or a state case raising a pertinent federal constitutional issue.'")
(quoting *Barrett v. Acevedo,* 169 F.3d 1155, 1161–62 (8th Cir. 1999) (en banc);
*Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015) ("To fairly present a federal
claim, a state prisoner is required to present the state courts with 'both the *legal* and
factual basis' for the claim.") (quoting *Williams v. Anderson*, 460 F.3d 789, 806 (6th
Cir. 2006) (emphasis in original)).

addressed Florida law. None of the cases he cited were decided on federal grounds and he did not otherwise indicate that he intended to raise federal claims.").

Here, Petitioner has failed to exhaust his claim in ground one because – in state court – Petitioner argued that the improper admission of evidence was erroneous under *Florida law*, not federal law. Petitioner suggests that he exhausted his state court remedies because he was denied a right to a fair trial as a result of the admission of evidence implicating Petitioner in two other violent crimes. In other words, Petitioner argues that – in state court – he raised concerns over violations of his federal due process rights because the prosecution relied on his past criminal conduct to suggest that Petitioner committed the underlying crime in question.

However, Petitioner made no references to the United States Constitution or any federal claim. If Petitioner sought to raise a federal due process claim, he should have done so "in words or substance" to alert the Florida state courts that he was bringing such a claim. *Id.* ("We . . . do not think that this requirement places a particularly onerous burden on state prisoners, who need only indicate to the state courts that they intend to raise a federal claim."). Consequently, Petitioner's failure to exhaust his state court remedies renders his federal claim procedurally defaulted. *See Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1353 (11th Cir. 2012) ("A petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on

habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default.").

In sum, Petitioner failed to exhaust his claim in ground one because he alleges for the *first* time in federal court that his federal due process rights were violated. Petitioner did not assert on direct appeal that his conviction was related in any way to the application of federal law, nor did Petitioner reference any federal authority – i.e. whether he "put the state court on notice that [he] intended to raise a federal claim." *Preston v. Sec'y, Florida Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015). While the exhaustion requirement does not require a "book and verse on the federal constitution", it does require Petitioner to provide the state courts with an opportunity to correct the federal claim. *See* 404 U.S. at 278 (citations omitted). Accordingly, we find that the claim in ground one should fail and that the Petition on this basis is **DENIED**.

As for Petitioner's claim in ground three, Petitioner argues that he was denied his constitutional right to effective assistance of counsel in violation of the Sixth Amendment and that – but for counsel's ineffectiveness – the result of the state court proceedings would have been different. Specifically, Petitioner contends that his appellate counsel failed to raise on direct appeal that the state trial court erred in denying Petitioner's motion to suppress. Although Petitioner acknowledges that he did not raise this issue in his post-conviction proceedings, Petitioner argues that any procedural default of this issue should be excused under the equitable doctrine of

*Martinez v. Ryan*, 566 U.S. 1, 15 (2012). As such, Petitioner concludes that he should be permitted to bring this claim for the first time so as to not deprive him of any judicial review on this issue.

In response, the Government argues that Petitioner rightfully admits that he did not exhaust ground three in state court as required. *See Johnson v. State*, 3 So. 3d 426, 426 (Fla. DCA 2009) ("[A] petition for writ of habeas corpus alleging ineffective assistance of appellate counsel must be filed 'in the appellate court to which the appeal was or should have been taken.'") (citing Fla. R. App. P. 9.141(c)(2); *see also Johnson v. State,* 694 So.2d 159, 159 (Fla. 4th DCA 1997)). For example, Petitioner filed a 3.850 motion in the trial court alleging that trial counsel was ineffective. Petitioner then filed an amended 3.850 motion, which was appealed to the state appellate court. However, no petition alleging ineffective assistance of *appellate* counsel was ever filed in the state appellate court. In fact, no claim on ineffective assistance of appellate counsel was ever raised in state court. Therefore, contrary to the Petitioner, the Government suggests that the Petitioner's procedural default should not be excused under any circumstance.

Under the procedural default rule, a "defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding. This rule generally applies to all claims, including constitutional claims." *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004) (citations omitted); *see also Reed v.*

*Farley,* 512 U.S. 339, 354 (1994) ("Where the petitioner—whether a state or federal prisoner—failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes cause for the waiver and shows actual prejudice resulting from the alleged violation." (internal quotation marks, punctuation, and citations omitted)).

There are, however, two exceptions to the general rule. The first exception requires a defendant to "show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." *Lynn*, 365 F.3d at 1234 (emphasis in original) (citations omitted); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[C]laims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.") (citations omitted). Specifically, this requires the Petitioner to demonstrate that there was "'some objective factor external to the defense' that impeded his efforts to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). "An external impediment includes 'interference by state officials' that prevented a petitioner from raising a claim." *Ward*, 592 F.3d at 1176 (quoting *Murray,* 477 U.S. at 488). Moreover, a "showing that the legal basis for a claim was not 'reasonably available to counsel' could constitute cause." *Ward*, 592 F.3d at 1157 (quoting *Ross*, 468 U.S. at 16). If a petitioner fails to show cause, the analysis for the first exception ends there and "we need not proceed to the issue of prejudice." *Ward*, 592 F.3d at 1157 (citing *McCleskey v. Zant,* 499 U.S. 467,

502 (1991)). But, once cause is shown, the petitioner must show actual prejudice which requires a petitioner to "demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" *Ward*, 592 F.3d at 1157 (quoting *McCoy v. Newsome,* 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

"Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default if 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Lynn*, 365 F.3d at 1234 (citations omitted); *see also Bailey v. Nagle,* 172 F.3d 1299, 1306 (11th Cir. 1999) (internal quotation marks and citations omitted) ("A habeas petitioner can escape the procedural default doctrine either through showing cause for the default and prejudice, or establishing a fundamental miscarriage of justice."). It is important to note that the second exception is "exceedingly narrow in scope" and "requires proof of actual innocence, not just legal innocence." *Ward*, 592 F.3d at 1157 (quoting *Johnson v. Alabama,* 256 F.3d 1156, 1171 (11th Cir. 2001)).

Here, Petitioner relies on the Supreme Court's decision in *Martinez*, which held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. In explaining the narrow exception to the general rule that ineffective assistance of post-conviction counsel cannot constitute cause to

overcome a procedural default, the Supreme Court expressly limited *Martinez* to

attorney errors in initial-review collateral proceedings:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 566 U.S. at 16 (internal citations omitted).

The Eleventh Circuit has made clear that "[w]hile *Martinez* did not establish a

constitutional right to counsel in state post-conviction proceedings, it did adopt the

constitutional standard from *Strickland* as the standard governing petitioners'

claims that their post-conviction counsel's conduct should excuse a procedural

default." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014). As the

Eleventh Circuit explained:

> Obviously the merits of the underlying ineffective-assistance claims have some bearing on both *Strickland* prongs; collateral counsel would clearly not fall below *Strickland*'s minimum competency requirements by deciding not to raise a meritless claim, and a

> But the merits of the underlying claim is only a part of the *Strickland* analysis. With unlimited time and the benefit of hindsight, a petitioner can come up with any number of potentially meritorious ineffective-assistance claims that he now wishes his collateral counsel had raised. However, a petitioner does not establish constitutionally defective performance simply by showing that (a) potentially meritorious claims existed and (b) his collateral counsel failed to raise those claims. *Murray*, 477 U.S. at 486 ("[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise

16

the claim despite recognizing it, does not constitute cause for a
procedural default."). "Experienced advocates since time beyond
memory have emphasized the importance of winnowing out weaker
arguments on appeal and focusing on one central issue if possible, or at
most on a few key issues." *Jones v. Barnes,* 463 U.S. 745, 751–52
(1983). "[A] per se rule that . . . the professional advocate, [is not]
allowed to decide what issues are to be pressed . . . seriously undermines
the ability of counsel to present the client's case in accord with counsel's
professional evaluation." *Id.* at 751, 103 S.Ct. at 3313.

As we have explained, *Strickland* instructs courts to "indulge a strong
presumption that counsel's conduct falls within the wide range of
reasonable professional assistance"—that counsel "rendered adequate
assistance and made all significant decisions in the exercise of
reasonable professional judgment." 466 U.S. at 689–90. To overcome
this presumption, a petitioner must "establish that no competent
counsel would have taken the action that his counsel did take."
*Chandler v. United States,* at 1315 (11th Cir. 2000) (en banc).

*Hittson*, 759 F.3d at 1262–63 (alterations added).

Petitioner's reliance on *Martinez* is misplaced because the decision does not

encompass claims that appellate counsel was ineffective. *See Martinez*, 566 U.S. at

15 ("*Coleman* held that an attorney's negligence in a postconviction proceeding does

not establish cause, and this remains true except as to initial-review collateral

proceedings for claims of ineffective assistance of counsel at trial."). As the Sixth

Circuit has explained, "[u]nder *Martinez*'s unambiguous holding our previous

understanding of *Coleman* in this regard is still the law—ineffective assistance of

post-conviction counsel cannot supply cause for procedural default of a claim of

ineffective assistance of appellate counsel." *Hodges v. Colson*, 727 F.3d 517, 531

(6th Cir. 2013) (citing *Landrum v. Mitchell*, 625 F.3d 905, 919 (6th Cir. 2010)); *see*

*also Porter v. Genovese*, 676 F. App'x 428, 434 (6th Cir. 2017) ("[T]he law of this

circuit is that *Martinez/Trevino*'s limited exception does not extend to claims of ineffective assistance of appellate counsel.") (citing *Hodges*, 727 F.3d at 531).

The Eleventh Circuit's recent unpublished decision in *Luciano v. Sec'y, Dep't of Corr.*, 701 F. App'x 792, 794 (11th Cir. 2017), demonstrates that *Martinez* does *not* apply to claims of ineffective assistance of appellate counsel because – to find otherwise – would ignore *Martinez*'s narrow scope and the Supreme Court's emphasis that *Martinez* "applies only to excusing a procedural default of ineffective-trial-counsel claims." *Id.* (citing *Chavez v. Sec'y, Florida Dep't of Corr.*, 742 F.3d 940, 945 (11th Cir. 2014)). In other words, "[a]ny broadening of *Martinez* to excusing a default of ineffective-appellate-counsel claims would ignore the Supreme Court's emphatic statements that *Martinez* creates only a narrow exception to *Coleman*'s general rule." *Id.* at 794.

Because the relief Petitioner seeks – which is an exception to the procedural default rule that his appellate counsel was ineffective – has been expressly denied in both the Eleventh Circuit and our sister circuits, we conclude that Petitioner's claim in ground three is procedurally barred as a matter of law and that the Petition on this basis is **DENIED**. Although the Court can end its analysis here – with respect to Petitioner's claims in grounds one and three – we will still address the merits of the entire Petition to explain – on a separate basis – why the Petition must fail on those grounds as well as grounds two and four.

## B.     *Ground One: Irrelevant Evidence*

Petitioner's first argument is that the state trial court erred in failing to redact evidence that Petitioner committed a robbery that was unrelated to the crimes charged.   In an audio statement, Petitioner answered questions from a detective that Petitioner obtained a firearm used in the underlying crime via a burglary earlier on the day in question.   The defense sought to have this statement redacted from an audio tape that was played before the jury, but the state trial court ruled otherwise and found that the evidence was admissible.   Because the court's ruling was erroneous, Petitioner concludes that any evidence about the unrelated crime was irrelevant, prejudicial, and inadmissible.

Petitioner further suggests that any statements about how he came to possess the firearm are irrelevant because they are unrelated to the elements of the crimes charged.[3]   Instead, the only important fact is that the Petitioner possessed a firearm and that it was used during the underlying robbery and homicide.   The introduction of evidence about a prior burglary was therefore prejudicial because – when jurors learned that Petitioner had committed another crime – they apparently presumed that Petitioner was guilty of the charges in this case.   *See Paul v. State*, 660 So. 2d 752, 754 (Fla. 1st DCA 1995) ("The improper admission of similar fact testimony is presumed harmful error.") (citation omitted).   Accordingly, Petitioner

---

[3]     Alternatively, Petitioner argues that the unrelated evidence should have been excluded because its probative value – if any – was substantially outweighed by the danger of unfair prejudice.   *See* Fla. Stat. § 90.403.

concludes that the state court's rulings were contrary to and an unreasonable application of Petitioner's constitutional right to a fair trial and/or the state court's decisions were based on an unreasonable determination of the facts in light of the evidence presented.

Under Florida law, "[e]vidence of bad acts not included in the charged offenses is generally referred to as 'collateral crimes evidence.' Collateral crimes evidence includes (1) similar fact evidence, which is governed by section 90.404, and is commonly referred to as 'Williams rule evidence,' and (2) all other relevant evidence, admissible pursuant to section 90.402." *Dorsett v. State*, 944 So. 2d 1207, 1212 (Fla. 3d DCA 2006). Evidence of other crimes or bad acts, is admissible under section 90.402, Florida Statutes if relevant, that is, if it is probative of a material issue other than the bad character of the accused. *Hunter v. State*, 660 So. 2d 244 (Fla. 1995). "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. "All evidence of a crime . . . 'prejudices' the defense case. The real question is whether that prejudice is so unfair that it should be deemed unlawful." *Wuornos v. State*, 644 So. 2d 1000, 1007 (Fla. 1994).

Here, Petitioner alleges that he was denied a fair trial because the trial court allowed into evidence a portion of a confession in which the Petitioner explained that he obtained a firearm via a burglary of a different house. Petitioner claims that the

evidence was not material, relevant, or probative and that it should have been excluded. However, the evidence was inextricably intertwined with the charged offenses because it explains what Petitioner and his co-defendants did from the time they discussed committing a robbery to the time they committed the murder occurred. In other words, the evidence is intertwined because it establishes the entire context of how the crimes arose, and the events leading to a murder.[4] *See Dorsett*, 944 So. 2d at 1213 ("Evidence is inextricably intertwined if the evidence is necessary to (1) 'adequately describe the deed,' (2) provide an intelligent account of the crime(s) charged, (3) establish the entire context out of which the charged crime(s) arose, or (4) adequately describe the events leading up to the charged crime(s),") (internal citations omitted). Because the events that led to the alleged murder explain the entire context on how the charged crimes arose, Petitioner's argument is misplaced, contrary to Florida law, and lacks merit. Therefore, we find that that Petitioner's claim in ground one is **DENIED**.[5]

### C.  *Ground Two: Ineffective Assistance of Counsel*

The next issue is whether Petitioner's defense counsel rendered ineffective assistance of counsel for failing to strike a juror ("Mr. Siu") and whether that failure violated Petitioner's Sixth Amendment rights. As part of Petitioner's defense

---

[4]  Petitioner's statement about the stolen firearm used in the charged burglary was made after *Miranda* warnings were provided.

[5]  Petitioner also fails to show that the admission of irrelevant evidence at trial was so prejudicial that it affected Petitioner's federal constitutional rights.

strategy, Petitioner claimed that his incriminating statement to police was a false confession. At voir dire, defense counsel questioned all of the jurors and asked if they could accept a defense that relied upon a false confession. When defense counsel questioned Mr. Siu, he initially responded that he did not think people made false confessions. Shortly thereafter, the prosecution moved to strike Mr. Siu – on an unrelated basis – because he expressed concern that he was unable to view graphic crime scene photos. The defense objected to the cause challenge and did not seek to strike Mr. Siu on his inability to accept a false confession defense. Ultimately, Mr. Siu was selected as a member of the jury that found Petitioner guilty as charged.[6]

At the state court post-conviction evidentiary hearing, defense counsel explained that – perhaps in retrospect – he would have considered striking Mr. Siu as a juror:

> Well, let me put it to you this way. If you look at it in isolation, it may sound like a bad juror. But, we're not looking at the venire in its totality. You don't know what there is in front or behind that juror. You don't – I don't remember how many peremptories I was thinking of exercising. I don't remember how many cause challenges I may have had, that I could, in good faith, argue. So, at that isolated moment, if I could select – if we could take the State out of the equation and I could select the jurors that I want; I probably, would have considered striking him.

---

[6]     The defense used six of its ten peremptory challenges.

[D.E. at 21].   When questioned on why defense counsel did not strike Mr. Siu and opposed the prosecution's attempt to strike him, defense counsel could not recall the specific legal strategy that he considered at the time:

> Without going back and reviewing all of the venire, all of the questions, all of the transcripts, I can't tell you what I was thinking.   And even if I did review all of those things today, I don't know if I could tell you what I was thinking back when I tried the case. But, I can tell you, equivocally, that my choice was the tactical choice.   It was something I consciously decided to do.   It didn't fall through the cracks.

[D.E. at 21].

The trial court ultimately denied Petitioner's motion for post-conviction relief because Petitioner affirmatively accepted the jury panel and acknowledged that he participated in and agreed with defense counsel's peremptory and for cause challenges.   *See Kelley v. State*, 109 So. 3d 811, 813–14 (Fla. 1st DCA 2013) ("[I]t follows that a defendant who, like Appellant, personally affirms his acceptance of the jury panel will not be heard to complain in a postconviction motion that his counsel was ineffective for allowing a biased juror to serve on his jury.   Otherwise, the defendant would have a 'trump card' to use in postconviction proceedings that is not available on direct appeal.") (citing *Joiner v. State,* 618 So.2d 174, 176 n.2 (Fla. 1993) (observing that, absent the requirement that alleged errors during jury selection must be renewed prior to the jury being sworn, the defendant "could proceed to trial before a jury he unqualifiedly accepted, knowing that in the event of an unfavorable verdict, he would hold a trump card entitling him to a new trial.")).

Specifically, the trial court relied on the following exchange at the conclusion of voir dire in support of its ruling:

> THE COURT: Mr. Benzant, now that we have concluded jury selection, is that your understanding of the jury that we selected?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you been present during the entire jury selection process?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you concur on the panel selection? Do you agree with that panel?
> THE DEFENDANT: Yes, sir.

[D.E. 1 at 23].

Petitioner argues that the decision to allow Mr. Siu to sit on the jury was unreasonable under the norms of professional conduct. Although defense counsel explained that the decision not to strike Mr. Siu was a tactical decision, Petitioner claims that the lack of any specific justification suggests that defense counsel never formulated a strategic decision. Petitioner further contends that his approval of the jury – at the conclusion of voir dire – should not undermine a finding that his defense counsel was ineffective because otherwise it places an unreasonably high burden on criminal defendants rather than defense attorneys. Because there is nothing to indicate that Petitioner provided informed, knowing, and voluntary consent to waive his constitutional right to a fair and impartial jury, Petitioner concludes that his defense counsel was ineffective for failing to strike Mr. Siu. As a result of that failure, Petitioner claims that his constitutional rights were violated and – absent counsel's ineffectiveness – the result of the trial would have been different.

"To protect counsel's independence, we start with the strong presumption that trial counsel's performance was constitutionally adequate." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1238 (11th Cir. 2011) (citing *Strickland*, 466 U.S. at 689).   To find otherwise, "the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Williams v. Taylor,* 529 U.S. 362, 390 (2000) (internal quotation marks omitted) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)); *accord, Chandler v. United States,* 218 F.3d 1305, 1312-1313 (11th Cir. 2000) (en banc).   The performance prong generally boils down to whether trial counsel's actions, or inactions, were the product of deficient performance or sound legal strategy.   *See Strickland,* 466 U.S. at 689 ("[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)); *see also Wood v. Allen,* 542 F.3d 1281, 1309 (11th Cir. 2008) ("[O]ther attorneys might have done more or less . . . or they might have made the strategic calls differently, but we cannot say that no reasonable attorney would have done as [he] did." (quoting *Williams v. Head,* 185 F.3d at 1223, 1224 (11th Cir. 1999)).

The *Strickland* test is difficult to meet because the Petitioner bears the burden of proof for both the performance prong and the prejudice prong – both of which must be proved for a petitioner to prevail. *See Jones v. GDCP Warden,* 753 F.3d 1171, 1184 (11th Cir. 2014) (noting that the prejudice prong is difficult to meet because the petitioner "has to show that every fair-minded jurist would conclude that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). The difficulty of the *Strickland* test is also bolstered by the fact that "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas,* 46 F.3d 1506, 1511 (11th Cir. 1995) (citation omitted).

After full consideration of the arguments presented and the relevant authorities submitted in support thereof, we find that the trial court correctly denied Petitioner's motion for post-conviction relief alleging ineffective assistance of counsel. First, Petitioner affirmatively accepted the jury panel presented and acknowledged that he agreed with defense counsel's peremptory challenges.[7] Throughout the voir dire process, Petitioner was present and the trial court informed him of his right to challenge the selection of jurors. After voir dire concluded, Petitioner affirmed to the trial court that he participated in the process and that he was satisfied with the

---

[7] The trial court considered the same argument presented and found that it lacked merit. This means that the "state court's findings of historical facts made in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, and similar federal district court findings are deemed correct . . . unless clearly erroneous." *Bolender v. Singletary,* 16 F.3d 1547, 1558 n.12 (11th Cir.1994) (citing *Bush v. Singletary,* 988 F.2d 1082, 1089 (11th Cir. 1993)) (citation omitted).

jurors selected. Because Petitioner agreed with defense counsel on the juror selections, he cannot argue – in hindsight – that his counsel was ineffective for failing to strike Mr. Siu for cause. *See Kelley*, 109 So. 3d at 814 ("[E]ven if his counsel was ineffective for not attempting to strike the jurors for cause, Appellant cannot go behind his representation to the trial court that he was satisfied with the jury by alleging that his counsel was ineffective in jury selection."); *see also Broughton v. Buss*, 2011 WL 13134626, at *14 (S.D. Fla. Aug. 3, 2011), *Report and Recommendation adopted*, 2011 WL 13134627 (S.D. Fla. Nov. 30, 2011) ("A claim of inadequate voir dire is also refuted by the record if the defendant affirmatively accepts the jury panel.") (citing *Solorzano v. State*, 25 So. 3d 19, 24 (Fla. 2d DCA 2009) ("Such a claim might also be conclusively refuted by the record if the defendant personally and affirmatively accepted the jury prior to its being sworn, thus affirmatively representing to the court that the jury composition and selection process were acceptable.")); *Muhammad v. State,* 782 So. 2d 343, 353 (Fla. 2001) (finding that a defendant who personally affirmatively accepted the jury before it was sworn had "ratified the procedure and accepted the jury" and thus could not complain of a due process violation during jury selection on direct appeal)). Therefore, Petitioner's participation and agreement with defense counsel during voir dire forecloses any relief that defense counsel was ineffective.

Second, there is no evidence that Petitioner's defense counsel prejudiced the outcome of the proceedings. Instead, the record suggests that defense counsel

pursued a tactical legal strategy where counsel took notes, questioned prospective jurors, and consulted with Petitioner on how to best achieve a fair and impartial jury. For example, when the State moved to strike Mr. Siu for cause, defense counsel objected – suggesting that he considered the juror, conferred with Petitioner, and believed that Mr. Siu would make a fair and impartial juror for trial. Given that prejudice is a required element under *Strickland* to establish ineffective assistance of counsel, Petitioner has failed to meet his burden.

Even if we put aside those problems, Petitioner's argument fails because there is no evidence that Mr. Siu was biased. Instead, the record shows that Mr. Siu was receptive to the idea of a false confession. When Mr. Siu was questioned during voir dire, he explained that he would not have difficulty with the idea that someone might provide a false confession. Thus, Mr. Siu attested that he was willing to follow the law and weigh the evidence. The state court also instructed all jurors, including Mr. Siu, to follow the law and to only use the evidence presented in reaching its verdict. Accordingly, there is nothing in the record to suggest that Mr. Siu was biased.

In sum, Petitioner cannot meet either prong of *Strickland* to find that his attorney rendered ineffective assistance of counsel because (1) Petitioner was in agreement with defense counsel's tactical decisions during voir dire, (2) there is no evidence that Mr. Siu was biased, and (3) Petitioner has no persuasive argument to suggest that he was prejudiced. Accordingly, the claim raised in ground two of the Petition is **DENIED**.

### D. *Ground Three: Ineffective Assistance of Counsel*

In ground three, Petitioner contends that his appellate counsel rendered ineffective assistance of counsel by failing to raise on direct appeal that the state trial court erred by denying Petitioner's motion to suppress statements to law enforcement officials. Prior to trial, defense counsel filed a motion to suppress Petitioner's confession. Petitioner claimed that he was incapable of properly waiving his *Miranda* rights at the time of the interrogation due to incompetency, mental health deficiencies, drug withdrawal, and/or intoxication. The state trial court denied the motion to suppress. On direct appeal, Petitioner alleges that appellate counsel failed to argue that the state trial court erred by denying the motion to suppress.

Petitioner argues that his appellate counsel should have appealed the trial court's determination that Petitioner's statements to law enforcement were involuntary. For instance, Petitioner claims that when he gave his incriminating statement to law enforcement, he was only nineteen years old and only had a tenth grade education. Petitioner further suggests that he had recently ingested Xanax, marijuana, cocaine, and alcohol. Complicating matters further, Petitioner explains that he was bipolar and heard voices, and that he stopped taking his daily medications more than a year *prior* to giving his statement to law enforcement. Because Petitioner's counsel failed to raise these issues before the state appellate

court, Petitioner concludes that his attorney rendered ineffective assistance of counsel.

Plaintiff's arguments are misplaced because he cannot establish that his appellate counsel was deficient or that his counsel's failure to raise the denial of his motion to supress was prejudicial. The trial court's decision to deny suppression was also not contrary to or an unreasonable application of Supreme Court precedent. As background, the U.S. Supreme Court in *Miranda* "established that custodial interrogation cannot occur before a suspect is warned of his rights against self-incrimination" under the Fifth Amendment. *United States v. Newsome*, 475 F.3d 1221, 1224 (11th Cir. 2007). As such, the right to *Miranda* warnings attaches at the moment a custodial interrogation begins because the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V; *see also United States v. Acosta,* 363 F.3d 1141, 1148 (11th Cir. 2004). This means that "[s]tatements made in violation of *Miranda* are not admissible at trial." *United States v. Qose*, 2017 WL 510429, at *2 (11th Cir. Feb. 8, 2017) (citation omitted). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a

'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citation omitted).

"[W]hether a suspect is 'in custody' is an objective inquiry." *J.D.B. v. North Carolina*, 564 U.S. 261, 270 (2011). Subjective beliefs of the defendant and the officer on whether a defendant was free to leave are irrelevant because "the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." *United States v. Peck*, 17 F. Supp. 3d 1345, 1358 (N.D. Ga. 2014) (citing *United States v. Brown,* 441 F.3d 1330, 1347 (11th Cir. 2006) (quotations, citations, alteration, and emphasis omitted)). In other words, the only relevant inquiry is how a reasonable person in the suspect's position understands the situation.

The Supreme Court has provided a number of factors to consider whether a defendant is in custody, including the location of the questioning, *Maryland v. Shatzer*, 559 U.S. 98, 110 (2010), its duration, *Berkemer v. McCarty*, 468 U.S. 420, 437 (1984), statements made during the interview, *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977), the presence or absence of physical restraints during the questioning *N.Y. v. Quarles*, 467 U.S. 649, 655 (1984), and the release of the interviewee at the end of questioning, *Beheler*, 463 U.S. 1121, 1122-23. In addition to the aforementioned factors, the Eleventh Circuit has provided several other factors to consider, "including whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be

compelled." *United States v. Street,* 472 F.3d 1298, 1309 (11th Cir. 2006) (quotation omitted). In considering the totality of the circumstances, the Eleventh Circuit has held that "[n]o particular fact in the 'custody' analysis is outcome determinative—[the court] simply weigh[s] the totality of the circumstances." *United States v. Lall,* 607 F.3d 1277, 1284 (11th Cir. 2010) (quoting *Brown*, 441 F.3d at 1349) (alterations added)).

And although the location itself is not dispositive in determining whether a defendant is in custody, "[c]ourts are *much less likely* to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings,' such as the suspect's home." *United States v. Ritchie,* 35 F.3d 1477, 1485 (10th Cir. 1994) (quoting 1 W. LaFave, *Criminal Procedure* § 6.6(e), at 496 (1984 & 1991 Supp.)); *see also United States v. Newton,* 369 F.3d 659, 675 (2d Cir. 2004) (noting that "absent an arrest, interrogation in the familiar surroundings of one's own home is generally not deemed custodial"); *United States v. Lanni,* 951 F.2d 440, 442 (1st Cir. 1991) (stating that a court should consider whether the suspect was questioned in "familiar or at least neutral surroundings" (quotation marks omitted)); *United States v. Helmel,* 769 F.2d 1306, 1320 (8th Cir. 1985) (finding it relevant in determining that defendant was not in custody that the questioning occurred in the defendant's home, "on his own turf") (quotation marks omitted).

Petitioner's argument lacks merit because all of the evidence suggests that the trial court's denial of Petitioner's motion to suppress was supported by the record.

For example, prior to Petitioner waiving his *Miranda* rights and speaking with law enforcement, medical personnel evaluated him and found that he did not appear confused and that his speech patterns were normal. And while Petitioner contends that he ingested Xanax, marijuana, cocaine and alcohol beforehand, there is nothing in the record to substantiate Petitioner's claims. Based on the underlying record, there is nothing that calls into question the trial court's determination that Petitioner's motion to suppress should have been denied.

In any event, Petitioner appears to rely on the fact that appellate counsel was ineffective simply because he failed to raise the denial of Petitioner's motion to suppress before the appellate court. Yet, "the Sixth Amendment does not require appellate attorneys to press every non-frivolous issue that the client requests to be raised on appeal, provided that counsel uses professional judgment in deciding not to raise those issues." *Eagle v. Linahan*, 279 F.3d 926, 940 (11th Cir. 2001) (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Without more, Petitioner's argument rings hollow because it provides nothing to support a finding that it meets either prong in *Strickland* to grant relief. Therefore, the claim in ground three of the Petition is **DENIED** because (1) the trial court's denial of defense counsel's motion to suppress was supported by the record, (2) the failure to raise every issue on appeal is not, by itself, a basis to find that counsel was ineffective as a matter of law, and (3) Petitioner has provided no basis to meet the two-part test enunciated in *Strickland*.

### E.  Ground Four: Cumulative Effect of the Errors

Petitioner's final argument is that all of the errors enumerated above resulted in him being denied a fair trial and a violation of his constitutional rights. *See Ewing v. Williams*, 596 F.2d 391, 396 (9th Cir. 1979) ("Where no single error or omission of counsel, standing alone, significantly impairs the defense, the district court may nonetheless find unfairness and thus, prejudice emanating from the totality of counsel's errors and omissions.").

As an initial matter, Petitioner's argument is dubious because the Eleventh Circuit has repeatedly expressed doubt on whether cumulative error is cognizable on federal habeas review. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012) ("We need not determine today whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law."); *Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014) ("In a previous case, we analyzed a cumulative error claim by assuming without deciding that such a clam in the context of ineffective assistance of counsel would be cognizable in the habeas context, and we affirmed the denial of the claim on the merits. . . . As in Morris, we need not decide the issue here because, even assuming a claim of cumulative error is cognizable in federal habeas proceedings, [petitioner] would not be able to satisfy that standard." (citing *Morris*, 677 F.3d at 1132 n.3)).

But, even if we assume that cumulative error is cognizable in federal habeas proceedings, Petitioner has failed to establish any entitlement to relief. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Baker,* 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). Yet, for the reasons discussed above regarding each individual claim of error, no claim is meritorious. And of the three claims raised above, two are unexhausted and procedurally barred, or fail to state a federal claim for relief. *See Morris*, 677 F.3d at 1132 ("We address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial.") (citing *United States v. Calderon,* 127 F.3d 1314, 1333 (11th Cir. 1997)). Because none of Petitioner's claims have any merit, "we have nothing to accumulate," to find a constitutional violation. *Morris*, 677 F.3d at 1132; *see also Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation.") (citing *United States v. Stewart,* 20 F.3d 911, 917-18 (8th Cir. 1994)). Accordingly, Petitioner's claim in ground four is **DENIED**.

### III.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that

the Petition pursuant to 28 U.S.C. § 2254 [D.E. 1] is **DENIED** as to all claims raised.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of

February, 2018.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge